**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

T.P.H. DOE, B.L.M. DOE, F.K. DOE, M.K.R. DOE, S.I. DOE 1, A.A. DOE 1, T.G.M. DOE, F.O.C. DOE, H.Z. DOE, A.M. DOE, F.R.A. DOE, F.A.Z. DOE, D.M. DOE, Z.D. DOE, H.N. DOE, G.M. DOE, S.I. DOE 2, R.J. DOE, S.N.G. DOE, C.E.K. DOE, C.M. DOE, D.R.N. DOE, L.X.L. DOE, N.J. DOE, H.S. DOE, O.K.C. DOE, F.A. DOE, C.V.K. DOE, S.P. DOE, M.D.J. DOE, T.D.D. DOE, K.S. DOE, G.R. DOE, J.M.J. DOE, J.M. DOE, N.J.F. DOE, M.R.M. DOE, M.M.L. DOE, E.E.L. DOE, C.E. DOE, B.A.J. DOE, N.M.A. DOE, N.L. DOE, A.A. DOE 2, C.H. DOE, M.P.J. DOE, I.I. DOE, H.Z. DOE 2, A.Z. DOE, A.T. DOE, I.M. DOE, A.N. DOE, I.S. DOE, A.Y. DOE, A.H. DOE, I.S. DOE 2, I.M. DOE 2 and U.H.T. DOE.

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security,

Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485,

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

JOSEPH B. EDLOW, in his official capacity as Director of the United States Citizenship and Immigration Services;

USCIS
Office of the Chief Counsel
5900 Capital Gateway Dr.
Mail Stop 2120
Camp Springs, MD 20588-0009,

UNITED STATES CITIZENSHIP AND IMMIGRATION

Case No.

SERVICES,

USCIS
Office of the Chief Counsel
5900 Capital Gateway Dr.
Mail Stop 2120
Camp Springs, MD 20588-0009,

and

DOROTHY MICHAUD, in her official capacity as Director of the Boston Field Office of United States Citizenship and Immigration Services;

USCIS
John F. Kennedy Federal Building
15 Sudbury St.
Boston, MA 02203,

Defendants.

## **COMPLAINT**

1. Fifty-eight (58) applicants for adjustment of status bring this action to stop USCIS from rewriting, by memorandum, the standard that governs whether they may become lawful permanent residents. On May 21, 2026, USCIS issued Policy Memorandum PM-602-0199, which declares that adjustment of status under section 245 of the Immigration and Nationality Act is "extraordinary" relief and an act of "administrative grace" that an applicant must earn by a showing of "unusual or even outstanding equities" — even when the applicant has no adverse factors at all.

2. That is not the law, and it never has been. For more than fifty years, adjustment of status has been governed by an individualized weighing of favorable and adverse factors. Under *Matter of Arai*, 13 I&N Dec. 494 (BIA 1970), where the favorable factors would otherwise warrant a grant and no adverse factors are present, adjustment is ordinarily granted. The heightened "unusual or even outstanding equities" showing exists only to offset adverse factors — fraud, misrepresentation, a serious immigration violation — when they are present. *Matter of Blas*, 15 I&N Dec. 626 (BIA 1974). PM-602-0199 turns that rule upside

down, declaring that "[t]he absence of adverse factors, by itself, does not demonstrate such unusual or outstanding equities."

3. PM-602-0199 is in direct conflict with the governing statute. Among other things, It converts adjustment of status from a path Congress created into a disfavored exception to consular processing. It treats an applicant's decision to use that path — rather than depart the United States and process an immigrant visa abroad — as an adverse factor to be offset. And it instructs adjudicators that an applicant's failure to depart, and lapses in status "while their adjustment of status applications are pending," weigh against the applicant — even though those lapses are routinely caused by USCIS's own adjudicative delays.

4. Congress created adjustment of status precisely to spare eligible noncitizens the departure-and-reentry it now reinstates. Section 245 is a parallel, congressionally authorized route to permanent residence, not a back door to be used only in extraordinary cases. Nothing in the statute authorizes USCIS to treat lawful use of that route as a mark against the applicant, to impose an "extraordinary relief" baseline, or to demand unusual equities from applicants with clean records.

5. USCIS calls PM-602-0199 a "reminder" and a restatement of "consistent and longstanding" law. It is neither. It is a substantive change to the governing adjudicative standard, adopted without statutory authority, without reasoned explanation, and without the notice-and-comment rulemaking the Administrative Procedure Act requires. An agency cannot insulate a new rule from review by calling it a clarification.

6. Nor do the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B) shield the Memorandum. Those provisions bar review of individual discretionary denials. They do not bar a challenge to the lawfulness of the policy that dictates those denials. Plaintiffs do not ask this Court to review any exercise of discretion in any particular case; they ask whether USCIS may, by memorandum, redefine the discretionary standard in excess of its statutory authority.

7. The consequences are concrete. Plaintiffs chose adjustment over consular processing in reliance on the standard that governed their application when they filed. They paid the filing fees, assembled

evidence calibrated to that standard, and built their lives around pending applications — employment authorization, advance parole, jobs, housing, and family. PM-602-0199 now treats those completed choices as insufficient, or as themselves adverse.

8. Plaintiffs seek a declaration that PM-602-0199 is unlawful; an order under 5 U.S.C. § 706(2) holding it unlawful and setting it aside; and, to the extent necessary to afford complete relief, an injunction against its application to pending and future adjustment applications.

## FACTUAL ALLEGATIONS

### The Statutory Framework for Adjustment of Status

9. Section 245(a) of the INA provides that the status of a noncitizen who was "inspected and admitted or paroled" into the United States "may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence," if the applicant is eligible to receive an immigrant visa, is admissible, and an immigrant visa is immediately available. 8 U.S.C. § 1255(a).

10. Adjustment of status does not circumvent the numerical limits on immigrant visas. When USCIS approves an adjustment application, the applicant is counted against the numerical limit for the relevant preference category exactly as a consular applicant would be. INA § 245(b), 8 U.S.C. § 1255(b). Adjustment changes only the place and manner in which an eligible applicant obtains lawful permanent resident status; it confers no advantage in the immigrant visa queue and evades no allocation Congress established.

11. Congress specified in section 245(c) the classes of noncitizens who are barred from adjusting status. Congress thus knew how to exclude categories of applicants from section 245(a), and it did not exclude those who lawfully use the mechanism. Sections 245(i) and 245(k) confirm that when Congress intended to forgive particular status violations, it said so expressly.

12. The First Circuit has held that this allocation is deliberate and exclusive: "Congress unambiguously reserved to itself the determination of who is eligible to apply for adjustment of status relief." *Succar v. Ashcroft*, 394 F.3d 8, 24 (1st Cir. 2005). "When Congress has wanted to impose special

restrictions on the applications for certain categories of aliens that it has deemed eligible, or conversely to open up eligibility for aliens that were ineligible, it has done so explicitly." *Id.* at 25–26. And "in the context of adjustment of status, Congress is particular about where it grants 'discretion' to the Attorney General." *Id.* at 27.

13. Congress also codified "dual intent" for certain nonimmigrant categories. Under INA § 214(h), 8 U.S.C. § 1184, a nonimmigrant in H-1B or L status may pursue permanent residence without contradicting the terms of that status. Congress made the pursuit of a green card compatible with maintaining these statuses.

14. Adjustment of status and consular processing are parallel, equally authorized routes to lawful permanent residence. Nothing in section 245 establishes a hierarchy in which departure for consular processing is the norm and adjustment is a privilege to be earned.

15. The purpose of the statute was to prevent fraud and circumvention — not to disfavor those who use an authorized route. Congress created adjustment of status in 1952 to eliminate the need for eligible noncitizens to depart and reenter the country to obtain an immigrant visa, and amended section 245 in 1960 to make adjustment more broadly available after criticizing the departure-and-reentry practice as costly and unnecessary. *See Succar v. Ashcroft*, 394 F.3d 8, 30–34 (1st Cir. 2005) (reviewing the legislative history of section 245).

**<u>The Longstanding Discretionary Standard: Arai and Blas</u>**

16. In *Matter of Arai*, 13 I&N Dec. 494 (BIA 1970), the Board of Immigration Appeals held that discretion under section 245 is exercised by weighing favorable and adverse factors in the individual case. The Board held that *where adverse factors are present*, an applicant *may* need to offset them by a showing of unusual or outstanding equities — and that where the favorable factors would ordinarily warrant a grant and no adverse factors are present, adjustment "will ordinarily be granted." In plain terms, *Arai* establishes that adjustment of status is a normal, lawful, and viable way for an eligible applicant to become

a permanent resident — not a rare favor. An applicant with a clean record does not have to prove anything extraordinary; under *Arai*, that applicant is ordinarily entitled to have the benefit granted.

17. In *Matter of Blas*, 15 I&N Dec. 626 (BIA 1974), the Board confirmed that the heightened "unusual or even outstanding equities" showing attaches *to offset adverse factors*. Nothing in *Blas* required an applicant without adverse factors to make an extraordinary showing. Put simply, the extra hurdle exists only for applicants who have something negative in their file to overcome. For everyone else, *Blas* leaves the ordinary rule intact: adjustment remains an available and lawful path, and the applicant is not required to clear a high bar just to use it.

18. Plaintiffs do not contend that adjustment of status is an entitlement, nor that USCIS's use of the word "extraordinary" is by itself unlawful. The First Circuit has described adjustment as an "extraordinary remedy" committed to the agency's "informed discretion," and has cautioned that *Matter of Arai* does not lay down rigid rules compelling approval whenever an applicant presents favorable equities. *Henry v. INS*, 74 F.3d 1, 4, 7 (1st Cir. 1996). But the applicant in *Henry* had firearms and assault convictions, had used false identification and a pseudonym, and had further adverse encounters with law enforcement; the heightened-equities requirement was applied there to overcome those substantial negative factors. *Id.* at 2–3, 7. Neither *Henry* nor any other decision holds that an applicant with no adverse factors must demonstrate unusual or outstanding equities to receive the ordinary exercise of discretion. That is the rule PM-602-0199 announces, and that rule is what Plaintiffs challenge.

19. USCIS's own Policy Manual codifies this individualized, totality-of-the-circumstances approach. 1 USCIS-PM E.8 (Discretionary Analysis); 7 USCIS-PM A.10 (Legal Analysis and Use of Discretion). Under this framework, applications without adverse factors were routinely approved, and a discretionary denial required articulable adverse reasons.

20. This is not merely case law from decades ago — it is how USCIS told its own officers to decide these cases. For years, the agency itself instructed that adjustment is a legitimate, ordinarily available path to permanent residence, and that an officer who wants to deny a clean application must be able to point

to a specific negative reason. Applicants and their lawyers relied on exactly that understanding when they chose to adjust status rather than leave the country to process a visa abroad.

**Policy Memorandum PM-602-0199**

21. On May 21, 2026, USCIS issued Policy Memorandum PM-602-0199, titled "Adjustment of Status is a Matter of Discretion and Administrative Grace, and an Extraordinary Relief that Permits Applicants to Dispense with the Ordinary Consular Visa Process." A true and correct copy is attached as Exhibit A and incorporated by reference.

22. USCIS issued PM-602-0199 without publishing a proposed rule, without soliciting public comment, and without notice-and-comment rulemaking. No notice appeared in the Federal Register, and affected applicants received no advance warning that the standard governing their pending applications would change.

23. The Memorandum states that it "reminds officers and the public" that adjustment of status "is a matter of discretion and administrative grace not designed to supersede the regular consular processing of immigrant visas," and that USCIS "reaffirms this consistent and longstanding approach."

24. The Memorandum contains a disclaimer that it "is intended solely for the guidance of USCIS personnel," "does not remove their discretion," and "may not be relied upon to create any right or benefit."

25. USCIS then published an accompanying press release announcing the Memorandum to the public. A true and correct copy is attached as Exhibit B and incorporated by reference. Where the Memorandum speaks of individualized consideration under the totality of the circumstances, and of heightened equities that an applicant "may" need to show, the press release drops every qualifier: USCIS announced that it "will grant adjustment of status only in extraordinary circumstances."

**What PM-602-0199 Changes**

26. Notwithstanding its self-description, PM-602-0199 changes the governing adjudicative standard.

27. First, the Memorandum directs officers to treat adjustment as extraordinary relief that the applicant must affirmatively justify. It instructs that, "[w]here consular processing is available," officers "are to consider" that adjustment "is an extraordinary discretionary relief to the regular immigrant visa process and is an act of administrative grace." It thereby converts a description of the relief into a burden the applicant must overcome.

28. Second, the Memorandum treats the use of adjustment instead of consular processing as an adverse factor. It states that an applicant's "contravention of th[e] expectation" of departure and "attempt to avoid the ordinary consular immigrant visa process . . . are adverse factors that the aliens may need 'to offset . . . by a showing of unusual or even outstanding equities.'" The Memorandum thus

29. Third, the Memorandum inverts *Arai*. It declares that "[t]he absence of adverse factors, by itself, does not demonstrate such unusual or outstanding equities." That is the opposite of *Arai*'s holding that, absent adverse factors, adjustment will ordinarily be granted.

30. Fourth, the Memorandum attaches adverse weight to a condition that USCIS itself creates. Footnote 18 states that applicants "usually fail to maintain their nonimmigrant or parole status while their adjustment of status applications are pending" and treats that lapse as adverse. USCIS's own adjudicative backlog is a frequent cause of that lapse. The Memorandum offers no explanation for holding it against the applicant. More fundamentally, the expiration of status that Footnote 18 points to has no bearing on the applicant's eligibility to adjust. The status bars in section 245(c) are measured at the time of filing. An applicant who is in lawful status when the Form I-485 is filed satisfies them; immediate relatives are exempt from them altogether; and section 245(k) forgives limited status violations for employment-based applicants. While a properly filed application is pending, the applicant is in a period of stay authorized by the Secretary and accrues no unlawful presence. If the applicant's underlying nonimmigrant status later expires while the application is still pending, that expiration neither disqualifies the applicant nor makes the applicant unlawfully present — the applicant remains eligible to adjust through the final decision. USCIS does not contend otherwise. It instead turns this harmless, agency-created circumstance into a discretionary strike against applicants who remain fully eligible for the benefit they seek.

31. Fifth, the Memorandum states that maintaining a dual-intent nonimmigrant status "is not sufficient, on its own, to warrant a favorable exercise of discretion," imposing a departure-preference premium that erodes the dual-intent right Congress codified in INA § 214(h).

32. Sixth, the Memorandum signals that it is the first step in a broader effort. It states that USCIS "will carefully review the various pathways" and "discrete populations of aliens" and "may provide policy guidance specific to certain adjustment of status categories or discrete populations."

33. Seventh, USCIS has told the public what the Memorandum means. Its contemporaneous press release states without qualification that the agency "will grant adjustment of status only in extraordinary circumstances." That is a categorical statement about outcomes, not a reminder about method, and it cannot be reconciled with the Memorandum's self-description as a restatement of "consistent and longstanding" law that leaves officer discretion intact. The agency's own public account of its action confirms what the Memorandum's text accomplishes.

34. PM-602-0199 does not change the statutory or regulatory eligibility criteria for adjustment. It identifies no statutory authority for the "extraordinary relief" baseline, the consular-processing preference, or the unusual-equities requirement for applicants without adverse factors. And it nowhere acknowledges that it departs from *Arai*, or explains why.

**Effect on Plaintiffs**

35. Each Plaintiff filed a Form I-485 application for adjustment of status before May 21, 2026, and each application either remains pending or has been adjudicated under PM-602-0199.

36. Each Plaintiff chose adjustment of status over consular processing in reliance on the standard set by *Arai* and *Blas* and reflected in the USCIS Policy Manual. Each paid the required filing fees and submitted evidence calibrated to that standard. None submitted evidence of "unusual or outstanding equities," because that showing was not required for an application without adverse factors.

37. Each Plaintiff has also relied on the benefits incident to a pending adjustment application, including employment authorization and advance parole, and has made employment, housing, education,

and family decisions premised on a pending application. Plaintiffs' reliance reflects completed, meaningful choices made under the framework PM-602-0199 now treats as insufficient.

38. No Plaintiff has been told that his or her application is disfavored because of individualized adverse information — fraud, misrepresentation, a criminal record, or a serious immigration violation — independent of the adverse factors PM-602-0199 newly manufactures out of the lawful use of adjustment itself.

39. Plaintiffs are injured now, whether or not USCIS has yet acted on their applications. PM-602-0199 governs the adjudication of every pending application, including Plaintiffs'. It requires Plaintiffs to establish unusual or outstanding equities that the framework in place at filing did not require, and their applications as submitted contain no such evidence. Plaintiffs must therefore either supplement their applications at additional cost and delay, or accept adjudication under a standard for which their filed record was never assembled. The Memorandum also treats the very choice each Plaintiff already made — to adjust rather than depart — as a factor weighing against them, and that choice cannot be unmade. These consequences attach on the Memorandum's own terms and do not await any further agency action.

## **JURISDICTION AND VENUE**

40. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution, the Immigration and Nationality Act, and the Administrative Procedure Act.

41. Judicial review is available under the Administrative Procedure Act, 5 U.S.C. §§ 702 and 704, because Plaintiffs challenge final agency action that imposes binding consequences on the adjudication of their applications. Sovereign immunity is waived for claims seeking relief other than money damages. 5 U.S.C. § 702. This Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202.

### ***A. PM-602-0199 Is Final Agency Action.***

42. PM-602-0199 consummates USCIS's decision-making. It is issued by the agency as controlling guidance, declares USCIS's "intention to faithfully apply the statutes consistently with this understanding," and directs the conduct of every officer who adjudicates an adjustment application. It is not tentative or interlocutory; it is the agency's final word on the standard governing adjustment discretion.

43. PM-602-0199 is also an action from which legal consequences flow. It directs officers to treat adjustment as extraordinary relief, to weigh the use of adjustment instead of consular processing as an adverse factor, and to require offsetting unusual or outstanding equities. It thereby fixes the legal standard applied to every pending and future adjustment adjudication, including Plaintiffs'. The Memorandum is accordingly final agency action reviewable under 5 U.S.C. § 704.

44. The Memorandum's disclaimer that it is "intended solely for the guidance of USCIS personnel" does not defeat finality. What matters is the Memorandum's practical effect. A directive that binds the conduct of adjudicators and channels their discretion toward a predetermined result is reviewable notwithstanding a boilerplate disclaimer.

***B. No Jurisdiction-Stripping Provision Bars Review.***

45. This case does not fall within any statutory bar to review. The jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B)(i) and (ii) strip review only of individual discretionary determinations in particular cases. Plaintiffs do not seek review of any individual exercise of discretion. They challenge the lawfulness of the policy of general applicability that governs those determinations, and *Patel v. Garland*, 596 U.S. 328 (2022), confirms that the bar reaches individual judgments, not the antecedent question whether the agency's governing standard is lawful. In any event, 8 U.S.C. § 1252(a)(2)(D) confirms that Congress did not strip review of questions of law arising under these provisions. Whether section 245(a) authorizes the standard PM-602-0199 imposes is a pure question of law, not a challenge to any discretionary judgment in any particular case.

46. In the alternative, review of ultra vires agency action is available regardless of the finality and reviewability provisions of the APA, because USCIS exceeded the authority delegated to it by section 245(a).

***C. Venue.***

47. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(e)(1). One or more Plaintiffs reside in this District; USCIS maintains a Field Office in Boston that adjudicates applications affecting Plaintiffs in this District, the operations of which are directed by Defendant Dorothy Michaud;

and a substantial part of the events giving rise to this action — the adjudication of certain Plaintiffs' applications under PM-602-0199 — occurs in this District.

**PARTIES**

**Defendants**

48. Defendant Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security and is sued in his official capacity, as well as any successors and assigns. He is responsible for the administration and enforcement of the immigration laws under INA § 103, 8 U.S.C. § 1103, and oversees USCIS, including its issuance and implementation of PM-602-0199.

49. Defendant United States Department of Homeland Security is the cabinet department charged with administering and enforcing the immigration laws, and oversees USCIS.

50. Defendant United States Citizenship and Immigration Services is the component of DHS charged with adjudicating applications for adjustment of status and other immigration benefits. USCIS issued PM-602-0199 and is responsible for its implementation.

51. Defendant Joseph B. Edlow is the Director of USCIS and is sued in his official capacity, as well as any successors and assigns. He is responsible for directing USCIS operations, including the issuance and implementation of PM-602-0199.

52. Defendant Dorothy Michaud is the Field Office Director of the USCIS Boston Field Office and is sued in her official capacity, as well as any successors and assigns. She is responsible for directing USCIS operations and implementing PM-602-0199 at the Boston Field Office.

**Plaintiffs**

53. Plaintiffs are noncitizens with Form I-485 adjustment applications that were pending before May 21, 2026, and that are now governed by PM-602-0199. They span multiple immigrant and nonimmigrant categories and multiple USCIS offices, illustrating the uniform, nationwide operation of the Memorandum.

54. Plaintiff T.P.H. Doe is a 27-year-old adjustment applicant residing in Massachusetts who is married to a United States citizen. He is a citizen of Haiti. Plaintiff filed a Form I-485 on September 29,

2025, nearly eight months before USCIS issued PM-602-0199, and the application remains pending. Plaintiff and Plaintiff's spouse have established a household that depends on their combined income. Requiring Plaintiff to depart for consular processing would interrupt that income and separate the couple for an indefinite period.

55. Plaintiff B.L.M. Doe is a 40-year-old adjustment applicant residing in Massachusetts whose spouse is an active-duty member of the United States military. She is a native of the Philippines. Plaintiff filed a Form I-485 on April 22, 2026, before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0936548483. Plaintiff accrued a lengthy period of overstay before filing and would face the inadmissibility bars of INA § 212(a)(9)(B) upon departure. Plaintiff's spouse cannot accompany Plaintiff abroad because of military service obligations, so the Memorandum's preferred route would separate a service member from a spouse for the duration.

56. Plaintiff F.K. Doe is a 41-year-old national of Canada, born in Iran, residing in Massachusetts. Plaintiff filed a Form I-485 on September 9, 2024, more than twenty months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0927634215. Plaintiff's application has been subject to the adjudicative delays challenged in related litigation, and Plaintiff has separately sought mandamus relief to compel adjudication.

57. Plaintiff M.K.R. Doe is a 46-year-old national of India residing in Massachusetts and the beneficiary of an approved employment-based petition with a priority date of February 28, 2014. Plaintiff filed a Form I-485 on June 6, 2022 — nearly four years before USCIS issued PM-602-0199 — and the application remains pending under receipt number LIN2290241817. Plaintiff's priority date was current from June 2022 through September 2022, but USCIS issued a Form I-485J receipt containing clerical errors in Plaintiff's surname and A-number that it did not correct until September 27, 2022. By the time USCIS approved the corrected Form I-485J on January 24, 2023, visa numbers in Plaintiff's category had retrogressed and the adjudication window had closed. Plaintiff has now waited more than four years for a decision on an application that was ready for approval while a visa number was available.

58. Plaintiff S.I. Doe 1 is a 46-year-old national of Kazakhstan residing in Indiana. Plaintiff filed a Form I-485 on July 29, 2025, nearly ten months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0933211636. Kazakhstan is among the countries subject to current entry restrictions, so consular processing offers Plaintiff no realistic route to permanent residence. Plaintiff also accrued overstay before filing and would trigger the ten-year bar of INA § 212(a)(9)(B) upon departure. For Plaintiff, the Memorandum's preference for consular processing is a preference for a door that is closed.

59. Plaintiff A.A. Doe 1 is a 37-year-old national of Ethiopia residing in Nevada who was granted asylum in the United States and applied to adjust status on that basis. Plaintiff filed a Form I-485 on January 9, 2026, more than four months before USCIS issued PM-602-0199, and the application remains pending under receipt number MSC2690104139. As an asylee, Plaintiff cannot safely return to Ethiopia, which makes consular processing not merely disfavored but impossible; the Memorandum compounds the problem by carving out refugees while saying nothing about asylees, who hold the same persecution-based protection. In direct reliance on the uncertainty the Memorandum created, Plaintiff withdrew from a state bar examination scheduled for July 2026, for which Plaintiff had prepared for nearly a year. That withdrawal is a completed and irreversible step taken because of the Memorandum.

60. Plaintiff T.G.M. Doe is a 34-year-old national of the Philippines residing in Pennsylvania. Plaintiff filed a Form I-485 on March 20, 2026, two months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0936106756; an adjustment interview is scheduled for August 17, 2026. Plaintiff is pregnant, has suffered a prior miscarriage, and has been advised to minimize long-distance travel. Departure for consular processing would also trigger a ten-year bar on return. Plaintiff's spouse has a childhood heart condition for which appropriate care may not be available in the Philippines. The Memorandum's preferred route would therefore risk both Plaintiff's pregnancy, undue hardship on Plaintiff’s spouse’s congenital defect, and indefinite family separation.

61. Plaintiff F.O.C. Doe is a 56-year-old national of Nigeria residing in Maryland who was granted asylum and applied to adjust status on that basis. Plaintiff filed a Form I-485 on May 2, 2025, more

than a year before USCIS issued PM-602-0199, and the application remains pending under receipt number MSC2590500984. Plaintiff's adjustment process has been pending approximately nine years in total, during which Plaintiff has been unable to pursue certain employment because of status, has restricted daily movement out of fear of enforcement, and has been separated from children and family abroad. Plaintiff was also unable to travel to attend their daughter's wedding. Plaintiff has no adverse factors of any kind in the record and is a law-abiding individual.

62. Plaintiff H.Z. Doe is a 49-year-old national of the Syrian Arab Republic residing in Texas and working in valid H-1B status, a category Congress designated as permitting dual intent under INA § 214(h). Plaintiff filed a Form I-485 on May 18, 2026, three days before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0936916913. Visa issuance for Syrian nationals is currently suspended, so if Plaintiff departs to pursue consular processing, Plaintiff cannot return; adjustment is the only available route. Plaintiff has worked for the same employer for eight years, holds a senior management position, and that employer has invested substantially in Plaintiff's permanent residence process. Plaintiff is also a party to related litigation challenging the adjudicative pause

63. Plaintiff A.M. Doe is a 28-year-old national of the Syrian Arab Republic residing in Missouri. Plaintiff filed a Form I-485 on August 18, 2025, nine months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0933439461; a Form I-130 remains pending and a Form I-765 has been approved. Plaintiff was in lawful status when the application was filed and has taken every step to remain in status since. Plaintiff's spouse was admitted to the United States through refugee resettlement and is now a lawful permanent resident who cannot return to Syria. the United States has had no embassy in Syria since 2012, and all visa processing for Syrian nationals is suspended, so if Plaintiff departs the family cannot be reunited anywhere. Plaintiff's priority date became current under the Final Action Table in the August 2026 Visa Bulletin.

64. Plaintiff F.R.A. Doe is a 13-year-old national of Jamaica residing in Maryland. Plaintiff filed a Form I-485 on February 20, 2026, three months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0935729275. Plaintiff is a student performing well

in a specialised STEM school. Loss of the family's ability to adjust in the United States would separate Plaintiff from a parent, with the attendant risk that Plaintiff becomes a ward of the state, and would inflict psychological and social harm on a minor child.

65. Plaintiff F.A.Z. Doe is an 8-year-old national of Jamaica residing in Maryland. Plaintiff filed a Form I-485 on February 26, 2026, before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0935729281. Plaintiff performs well in school, and enjoys spending time in community volunteer programs. Application of the Memorandum to the family's applications threatens Plaintiff with separation from a parent and, potentially, with becoming a ward of the state, which would cause irreversible, potential psychological damage at a tender age.

66. Plaintiff D.M. Doe is a 34-year-old national of Rwanda, born in the Democratic Republic of the Congo, residing in Indiana. Plaintiff filed a Form I-485 on December 16, 2024, seventeen months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0929138741. Plaintiff is married and the couple is planning to have children; Plaintiff's spouse has a history of health problems and depends on Plaintiff's presence. Because Plaintiff accrued overstay before filing, departure for consular processing would trigger a ten-year bar on return, converting the Memorandum's preferred route into permanent separation.

67. Plaintiff Z.D. Doe is a 35-year-old national of the Russian Federation residing in California who is married to a United States citizen. Plaintiff filed a Form I-485 on September 19, 2025, eight months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0933886425. Plaintiff and their spouse have built a life together over the past three years. Requiring Plaintiff to depart for consular processing would separate the couple for an indefinite period.

68. Plaintiff H.N. Doe is a 63-year-old adjustment applicant residing in Florida who pursued permanent residence through the EB-5 immigrant investor program. He is a citizen of Chile. Plaintiff filed a Form I-485 on September 9, 2024, twenty months before USCIS issued PM-602-0199, and the application remains pending under receipt number WAC2590009843; Plaintiff's Form I-526E was approved on April 3, 2026, three years after filing. Plaintiff filed concurrently on the advice of counsel that concurrent filing

was permitted, and committed substantial capital to a United States investment in reliance on that route. The Memorandum now places that completed, capital-committing choice in dispute after the fact.

69. Plaintiff G.M. Doe is a 54-year-old adjustment applicant residing in Florida and the spouse Plaintiff H.N. Doe. G.M. Doe is a citizen of Chile and Spain. Plaintiff filed a Form I-485 on September 9, 2024, before USCIS issued PM-602-0199, and the application remains pending under receipt number WAC2590009842.

70. Plaintiff S.I. Doe 2 is a 32-year-old national of Nigeria residing in Missouri who holds deferred action under DACA. Plaintiff filed a Form I-485 on March 20, 2026, two months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0936114261. Plaintiff's period of overstay accrued during childhood and continued into adulthood through no choice of Plaintiff's own. Plaintiff has no relatives, home, resources or known contacts in Nigeria.

71. Plaintiff R.J. Doe is a 49-year-old national of the United Kingdom residing in Missouri. Plaintiff filed a Form I-485 on February 11, 2026, three months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0934054941. Plaintiff has extensive family-ties in the United States, including multiple grandchildren. Plaintiff has no residence or support available in the United Kingdom. The prolonged uncertainty has caused Plaintiff significant depression and daily distress.

72. Plaintiff S.N.G. Doe is a 46-year-old adjustment applicant residing in Texas who is married to a United States citizen and has a 13-year-old daughter enrolled in school in the United States. She is a citizen of Dominica. Plaintiff filed a Form I-485 on September 10, 2024, twenty months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0927643132. Plaintiff is employed and the couple files taxes jointly. Departure for consular processing would separate Plaintiff from a spouse and a minor child whose only family in the United States are her two parents.

73. Plaintiff C.E.K. Doe is a 41-year-old national of Canada residing in Missouri. Plaintiff filed a Form I-485 on September 4, 2025, eight months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0933681504; Plaintiff has already attended an adjustment interview and awaits a decision. Plaintiff married a United States citizen in 2021 while in H-1B status, lost

that employment upon becoming pregnant, and has two children with a third due within a month. Plaintiff's husband's professional credentials are not recognized in Canada, so consular processing would require him to remain working in the United States while Plaintiff and three young children lived abroad alone, a separation this family has already endured once. The extended pendency has also made Plaintiff's return to the workforce substantially harder.

74. Plaintiff C.M. Doe is a 28-year-old national of France residing in Kansas who has maintained valid F-1 status continuously since arriving as a student in August 2017 and is currently authorized for post-completion practical training through January 2027. Plaintiff filed a Form I-485 on April 17, 2026, before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0936481923. Plaintiff and Plaintiff's wife filed in the express belief that they were legally entitled to adjust status within the United States rather than depart for consular processing, and made their plans in reliance on that understanding. Plaintiff's wife does not speak French and could not accompany Plaintiff. Plaintiff's wife recently lost her brother, and is already in a delicate state. Any separation would be unduly burdensome on her mental state. Plaintiff has never violated the terms of any status.

75. Plaintiff D.R.N. Doe is a 42-year-old national of Australia residing in California who is married to a United States citizen. Plaintiff filed a Form I-485 on October 2, 2025, seven months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE9745821877; Plaintiff and Plaintiff's spouse attended a combined I-130/I-485 interview in December 2025, and neither application has been adjudicated since. Plaintiff has never violated the terms of any visa. If work authorization is not extended and adjustment is not available, Plaintiff would be forced to leave a position held for more than eleven years with a United States nonprofit organization, would be separated from a spouse, and would be unable to continue paying the couple's mortgage.

76. Plaintiff L.X.L. Doe is a 42-year-old national of Singapore residing in Indiana. Plaintiff filed a Form I-485 on October 6, 2025, seven months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0934128675. Plaintiff's spouse has a chronic illness

and was recently hospitalized due to renal failure, and Plaintiff is her primary caregiver. Plaintiff's absence during consular processing would be seriously detrimental to her physical and mental health.

77. Plaintiff N.J. Doe is a 29-year-old national of Rwanda residing in Louisiana who applied to adjust status on the basis of marriage. Plaintiff filed a Form I-485 on June 20, 2025, eleven months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0932571951. Plaintiff was in lawful status when the application was filed, has never overstayed, never violated status and never delayed. Plaintiff and Plaintiff's spouse established their home and made joint financial and personal decisions around the expectation that a properly filed application would be decided in the United States, and Plaintiff's ability to work is tied to the pending application. Plaintiff has no adverse factors of any kind and asks only that the application be adjudicated under the law in place when it was filed.

78. Plaintiff H.S. Doe is a 73-year-old widow and national of the Syrian Arab Republic residing in North Carolina who is the beneficiary of a Form I-130 filed by her United States citizen daughter. Plaintiff filed a Form I-485 on July 24, 2025, ten months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0933132533. Syria is subject to Presidential Proclamation 10998, and issuance of all immigrant and nonimmigrant visas to Syrian nationals is suspended; if Plaintiff departs to pursue consular processing, Plaintiff cannot return. Plaintiff lived alone in Syria for many years amid ongoing conflict and has not been able to see all of her children together in eight years. Plaintiff is fully qualified for adjustment under the statute, and it is the only route by which she can join her family. Plaintiff is also a party to related litigation challenging the adjudicative hold.

79. Plaintiff O.K.C. Doe is a 30-year-old adjustment applicant residing in Texas who is married to a United States citizen. He is a citizen of Nigeria. Plaintiff filed a Form I-485 on October 22, 2025, seven months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0934428542; Plaintiff has already completed the adjustment interview and is working lawfully in the United States. Departure for consular processing would interrupt that employment, separate Plaintiff from a spouse for an unknown period, and subject the couple to unpredictable delays abroad.

80. Plaintiff F.A. Doe is a 60-year-old national of Nigeria residing in Maryland who was granted asylum and applied to adjust status on that basis. Plaintiff filed a Form I-485 on May 2, 2025, more than a year before USCIS issued PM-602-0199, and the application remains pending under receipt number MSC2590500983. Plaintiff's adjustment process has been pending approximately nine years, during which Plaintiff has been unable to pursue certain employment because of status, has restricted daily movement out of fear of enforcement, and has been unable to travel to attend their father's burial or daughter's wedding. Plaintiff has been separated from children and family for nine years and has no adverse factors in the record and is a law-abiding individual.

81. Plaintiff C.V.K. Doe is a 27-year-old national of Nicaragua residing in Alabama. Plaintiff filed a Form I-485 on April 14, 2025, thirteen months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0931704946. Plaintiff has a newborn daughter who needs both parents present in a stable home. Consular processing abroad is uncertain in duration and would separate the family during their child's formative years.

82. Plaintiff S.P. Doe is a 45-year-old national of Haiti residing in Maryland who is married to a United States citizen. Plaintiff entered the United States lawfully on a valid visitor visa with no overstay, later obtained Temporary Protected Status, and filed a Form I-485 on October 25, 2025, seven months before USCIS issued PM-602-0199; the application remains pending under receipt number IOE0934290177. USCIS scheduled Plaintiff's marriage-based interview and then cancelled it because of executive travel restrictions affecting Haiti. Plaintiff has waited without a rescheduled date since, and counsel has received no communication from USCIS. Plaintiff's delay is entirely of the agency's making, and the Memorandum would hold the resulting pendency against Plaintiff.

83. Plaintiff M.D.J. Doe is a 35-year-old national of Venezuela residing in Texas who has lived in the United States for more than ten years. Plaintiff filed a Form I-485 on August 27, 2024, nearly twenty-one months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0927436889. Plaintiff's wife is a United States citizen and the couple has a young daughter who depends

on Plaintiff emotionally and financially. Return to Venezuela is not a practical option given ongoing political, economic and security conditions and the uncertainty of processing abroad.

84. Plaintiff T.D.D. Doe is a 23-year-old national of Jamaica residing in North Carolina who is married to a United States citizen. Plaintiff filed a Form I-485 on February 12, 2026, three months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0935593681. Because Plaintiff overstayed a visa before filing, departure for consular processing would bar Plaintiff from reentry. Plaintiff's wife is completing her education and could not relocate abroad without interrupting it, for an indeterminate period of time. For this couple, the Memorandum's preferred route means indefinite separation, not an alternative path.

85. Plaintiff K.S. Doe is a 45-year-old national of the Russian Federation residing in Indiana who is married to a United States citizen. Plaintiff filed a Form I-485 on October 10, 2025, seven months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0934157363. The United States embassy in Russia is not open to Russian nationals for visa processing, so consular processing is unavailable to Plaintiff as a practical matter. Plaintiff's career is established in the United States, and Plaintiff's husband cannot relocate to Russia pursuant to his employer's company policy

86. Plaintiff G.R. Doe is a 46-year-old national of Canada, born in Iran, residing in Connecticut, who is married to a United States citizen. Plaintiff filed a Form I-485 on September 5, 2025, eight months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0933843969. Plaintiff's wife has chronic illnesses that prevent her from traveling, and she depends entirely on Plaintiff's income and on health insurance provided through Plaintiff's employment. Plaintiff's TN work authorization expired on August 7, 2026, and without adjustment the couple faces loss of income, loss of medical coverage, and the inability to pay their mortgage, placing their home at risk.

87. Plaintiff J.M.J. Doe is a 42-year-old national of Venezuela residing in California who was inspected and paroled into the United States on humanitarian parole in June 2024. Plaintiff filed a Form I-485 on March 6, 2025, with concurrent Forms I-130, I-131 and I-765, more than fourteen months before USCIS issued PM-602-0199, and all remain pending under receipt number IOE0930487029. Plaintiff had

valid status when the application was filed; the parole program under which Plaintiff entered has since been discontinued, and Venezuela is subject to the current suspension, so consular processing is not available. Plaintiff has been without work authorization since filing for adjustment of status, cannot contribute to the household, and the couple has been relying on their savings to cover their ordinary living expenses, steadily depleting their available reserves.. Plaintiff suffered a miscarriage in October 2025 and attributes it to the prolonged stress of the delay.

88. Plaintiff J.M. Doe is a 33-year-old adjustment applicant residing in Illinois who has lived in the United States for six years with an asylum application pending and is married to a United States citizen. He is a citizen of Haiti. Plaintiff filed a Form I-485 on January 21, 2026, four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0935355584. Plaintiff is a full-time registered respiratory therapist at a top-tier academic hospital, and works additional shifts at a second, children's hospital. Plaintiff is enrolling in the largest Bachelor of Science in Nursing program in the country, making them a highly desirable candidate for further licensure and employment. Plaintiff has extensive family ties in the United States, as well as deep ties to their community – including volunteer work with an established local charity, and their local community church. Plaintiff has filed, and paid taxes, as required, every year since 2021.. Plaintiff's record contains substantial favorable equities and no adverse factors whatsoever.

89. Plaintiff N.J.F. Doe is a 45-year-old national of Chile residing in Illinois who is married to a United States citizen. Plaintiff filed a Form I-485 on October 17, 2025, seven months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0934274356. Plaintiff's wife is pregnant with twins in a high-risk pregnancy, is on bed rest and is prohibited from traveling. Plaintiff has not been granted work authorization, so the household depends entirely on her income and she must return to work six weeks after delivery; the couple cannot afford daycare and has no family nearby, making Plaintiff's presence necessary to care for the twins. The couple owns a home and recently purchased a vehicle to accommodate the growing family, and relocation to Chile is not financially feasible.

90. Plaintiff M.R.M. Doe is a 57-year-old national of Brazil residing in Missouri. Plaintiff filed a Form I-485 on May 12, 2025, more than a year before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0931874357. Plaintiff is a survivor of domestic abuse, and Plaintiff's soon-to-be former spouse now lives in Brazil. Requiring Plaintiff to return to Brazil for consular processing would place Plaintiff in proximity to that abuser, with no means of financial support and nowhere to live.

91. Plaintiff M.M.L. Doe is a 34-year-old national of Venezuela residing in Texas who married a United States citizen in February 2025. Plaintiff filed concurrent Forms I-130, I-485 and I-765 on August 15, 2025, nine months before USCIS issued PM-602-0199, and they remain pending under receipt number IOE0933454963; Plaintiff and Plaintiff's husband attended their marriage-based interview on December 2, 2025, and nothing has been adjudicated since. Plaintiff held Temporary Protected Status under the 2021 designation when the application was filed; that designation was cancelled effective November 7, 2025, leaving Plaintiff without status and without employment authorization notwithstanding properly filed pending applications. Venezuela has no functioning United States consular presence and is subject to a heightened travel advisory, and Plaintiff, a gay man who has publicly criticized the Venezuelan government, faces particular danger there; departure would also likely trigger a ten-year bar. Plaintiff has developed physical and mental health conditions attributable to the sustained uncertainty.

92. Plaintiff E.E.L. Doe is a 39-year-old national of Nigeria residing in Florida who applied to adjust status on the basis of employment. Plaintiff filed a Form I-485 on October 14, 2022, more than three and a half years before USCIS issued PM-602-0199, and the application remains pending under receipt number MSC2390033817. Nigeria is among the countries subject to current entry restrictions, so consular processing offers no route by which Plaintiff could return. Plaintiff has been out of status for over a year while the application has been pending — a lapse of exactly the kind Footnote 18 of the Memorandum would hold against Plaintiff — and departure would therefore trigger a ten-year bar. Plaintiff has worked for the sponsoring employer for three years and would lose the very employment on which the application is based.

93. Plaintiff C.E. Doe is a 29-year-old national of Venezuela residing in Michigan whose wife, child and stepchildren all live in the United States. Plaintiff filed a Form I-485 on September 2, 2025, more than eight months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0933660550. Plaintiff's absence would leave the household without Plaintiff's income and without childcare for a young child while Plaintiff's wife works. Plaintiff overstayed a period of parole before filing, and departure could subject Plaintiff to reentry bars.

94. Plaintiff B.A.J. Doe is a 37-year-old national of Haiti residing in New York who was lawfully inspected and admitted and is in a bona fide marriage with a United States citizen. Plaintiff filed a Form I-485 on February 14, 2025, more than fifteen months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0930148346. Plaintiff's five-year-old daughter has sickle cell disease and requires around-the-clock care; Plaintiff and Plaintiff's wife rotate shifts around her work schedule so that a parent is always present, and the child requires frequent hospitalization. Haiti is subject to current entry restrictions and has no functioning United States embassy. Gang members seized Plaintiff's home there approximately eighteen months ago, and Plaintiff's sister has been displaced since. Plaintiff filed on counsel's advice that adjustment was Plaintiff's legal right given a lawful entry and a bona fide marriage.

95. Plaintiff N.M.A. Doe is a 62-year-old national of Zimbabwe residing in Texas who filed for adjustment on the basis of an approved EB-1A petition. Plaintiff filed a Form I-485 on May 28, 2025, nearly a year before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0932164649; the Form I-140 approval notice itself that Plaintiff’s I-485 is based of, recites that Plaintiff is present in the United States and will apply for adjustment of status. Plaintiff's father died in July 2026, and Plaintiff was unable to travel to say goodbye or to help with funeral arrangements for a mother with advanced Parkinson's disease, because Plaintiff feared being denied reentry despite holding a valid employment authorization and advance parole document. Plaintiff has lived in the United States for eight and a half years and operates a business whose clients are almost entirely American and which depends on annual industry events held in the United States; visa processing at the Zimbabwean embassy is closed and

restrictions apply to Zimbabwean nationals. Consular processing would end that business and require Plaintiff to rebuild a life from nothing.

96. Plaintiff N.L. Doe is a 59-year-old national of Zimbabwe residing in Texas and a member of the same household as Plaintiff N.M.A. Doe. Plaintiff filed a Form I-485 on May 28, 2025, nearly a year before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0932164653. Zimbabwe is among the countries subject to current restrictions, so consular processing is not an available option. Plaintiff has built a life in the United States over the past eight years, with established community and social ties, and economic and political conditions in Zimbabwe would make rebuilding there unattainable.

97. Plaintiff A.A. Doe 2 is a 23-year-old national of Morocco residing in Utah who is married to a United States citizen. Plaintiff filed a Form I-485 on January 2, 2026, more than four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0935142707; Plaintiff's Form I-130 has been approved. Plaintiff's student employment authorization expired and Plaintiff's employer has held the position open for nearly three months awaiting a new Employment Authorization Document. Plaintiff and Plaintiff's wife have reserved a venue for a December 2026 wedding celebration at which both families, traveling from abroad, will meet in person for the first time. Departure for consular processing would cost Plaintiff that position and separate the couple during it.

98. Plaintiff C.H. Doe is a 48-year-old national of Venezuela residing in New Jersey. Plaintiff filed a Form I-485 on July 8, 2025, more than ten months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0933334705. Plaintiff has no passport and no means of obtaining one, and current restrictions would prevent Plaintiff from returning to the United States if Plaintiff departed. Plaintiff's family in Venezuela lives in poverty following earthquake devastation and depends on Plaintiff's United States earnings for health care, food and necessities.

99. Plaintiff M.P.J. Doe is a 33-year-old national of Mexico residing in the United States. Plaintiff filed a Form I-485 on March 24, 2025, fourteen months before USCIS issued PM-602-0199, and the application pending under receipt number IOE0930943554. Plaintiff’s separation from his wife due to

his immigration status would have a profound impact on their marriage and household life. Such separation would cause significant harm to Plaintiff and his wife's mental health, financial situation, and overall stability and would substantially disrupt their lives.

100. Plaintiff I.I. Doe is a 48-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 10, 2023, thirty four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE921371326. Plaintiff is the head of household for a family of ten that is now established in the United States. Plaintiff, and their family, cannot safely return to Afghanistan because conditions there make travel to and return from the country unsafe. Furthermore, there is no U.S. Embassy in Afghanistan, and Plaintiff neither has a passport nor other means of traveling there. Accordingly, Plaintiff would be unable to safely return to Afghanistan or access U.S. consular services there if Plaintiff were required to depart the United States – which would be unduly burdensome with such a substantial family.

101. Plaintiff H.Z. Doe 2 is a is a 45-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371327. Plaintiff is a derivative of Plaintiff I.I. Doe and is part of the same family that is now established in the United States. Plaintiff cannot safely return to Afghanistan due to the unsafe conditions there and the lack of U.S. consular services in the country. Plaintiff also lacks a passport or other means of travel. Requiring Plaintiff to depart the United States would therefore create significant hardship for Plaintiff and their family.

102. Plaintiff A.Z. Doe is a 19-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371328. As a derivative of Plaintiff I.I. Doe, Plaintiff is part of the same family now established in the United States. Given the current conditions in Afghanistan, Plaintiff cannot safely travel to or return to the country. Plaintiff also does not have a passport or other travel documents and would have no access to U.S. consular services because there is no U.S. Embassy in Afghanistan. Requiring Plaintiff to leave the United States would thus impose substantial hardship on Plaintiff and their family.

103. Plaintiff A.T. Doe is a 25-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371335. As a derivative of Plaintiff I.I. Doe, Plaintiff is part of the same family established in the United States. Plaintiff cannot safely return to Afghanistan given the prevailing conditions and lack of access to U.S. consular services there. Plaintiff also lacks a passport or other means of travel, making any forced departure from the United States particularly burdensome.

104. Plaintiff I.M. Doe is a 25-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371332. Plaintiff is a derivative of Plaintiff I.I. Doe and faces the same hardship departure from the United States would impose. Plaintiff has no passport or other travel documents and cannot return to Afghanistan to consular process due to the absence of a U.S. Embassy.

105. Plaintiff A.N. Doe is a 23-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371333. Plaintiff is a derivative of Plaintiff I.I. Doe and is part of the family now established in the United States. Because of the unsafe conditions in Afghanistan, Plaintiff cannot safely return there.

106. Plaintiff I.S. Doe is a 20-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371331. As a derivative of Plaintiff I.I. Doe, Plaintiff is part of the family established in the United States. A forced departure would place Plaintiff in a difficult position because returning to Afghanistan is not a safe or realistic option under the current circumstances. Plaintiff does not possess a passport or other travel documents and would have no U.S. Embassy available for consular assistance in Afghanistan. Requiring Plaintiff to leave the United States would therefore cause considerable hardship and disrupt the family's established life here.

107. Plaintiff A.Y. Doe is a 16-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending

under receipt number IOE0921371336. Plaintiff is a derivative of Plaintiff I.I. Doe and has grown up as part of a family now settled in the United States. Requiring this Plaintiff to leave the United States would cause substantial disruption and hardship to Plaintiff and the family.

108. Plaintiff A.H. Doe is a 12-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371329. Plaintiff is a derivative of Plaintiff I.I. Doe and resides with the family in the United States. At only twelve years old, Plaintiff would face significant challenges if required to return to Afghanistan, particularly without a passport or other travel documents. The lack of a U.S. Embassy there would further limit Plaintiff's ability to obtain assistance.

109. Plaintiff I.S. Doe 2 is a 9-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371330. Plaintiff is a derivative of Plaintiff I.I. Doe and is part of the family established in the United States. Given Plaintiff's young age and reliance on the family's stability, uprooting Plaintiff from the only life Plaintiff has known during this formative period would cause significant hardship. Requiring Plaintiff to return to Afghanistan would be especially difficult and unsafe.

110. Plaintiff I.M. Doe 2 is a 7-year-old national of Afghanistan. Plaintiff filed a Form I-485 on July 19, 2023, thirty-four months before USCIS issued PM-602-0199, and the application remains pending under receipt number IOE0921371334. Plaintiff is a derivative of Plaintiff I.I. Doe and has spent nearly three years growing up and establishing a stable life in the United States. Given Plaintiff's young age and dependence on the family's stability, uprooting Plaintiff from this environment and requiring a return to Afghanistan would be particularly disruptive and harmful. Plaintiff also lacks a passport or other travel documents, and there is no U.S. Embassy in Afghanistan to provide consular assistance.

111. Plaintiff U.H.T. Doe is a 37-year-old national of Nigeria. Plaintiff filed Form I-485 on June 16, 2021, almost five years before USCIS issued PM-602-0199, and the application remains pending under receipt number MSC2191532292. Plaintiff earned a Master's degree in Information Systems in the United States, established his professional career in the United States, and is currently employed by a U.S.

company. Plaintiff is a homeowner with ongoing mortgage, tax, insurance, and maintenance obligations. Plaintiff has established strong professional and community ties in the United States through his employment, volunteer activities, and longstanding relationships. Requiring Plaintiff to leave the United States for consular processing would interrupt his employment, and community commitments, and ultimately could affect his ability to return to the United States which would result in the abandonment of his financial obligations.

## CAUSES OF ACTION

### COUNT I — APA: CONTRARY TO LAW AND IN EXCESS OF STATUTORY AUTHORITY (5 U.S.C. § 706(2)(A), (C))

112. Plaintiffs reallege and incorporate the preceding paragraphs. PM-602-0199 is final agency action for the reasons stated above.

113. The APA directs a reviewing court to "hold unlawful and set aside" agency action that is "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C).

114. In promulgating PM-602-0199, USCIS invoked only two sources of authority: INA § 103(a), 8 U.S.C. § 1103(a), and INA § 245(a), 8 U.S.C. § 1255(a). Neither authorizes the standard the Memorandum imposes. Section 103(a) confers general administrative authority; it does not authorize USCIS to add substantive conditions to a benefit Congress defined. And section 245(a) authorizes the Secretary to adjust status "in his discretion" — it does not authorize USCIS to treat the use of adjustment as an adverse factor, to impose an "extraordinary relief" baseline, to prefer consular processing, or to require unusual or outstanding equities from applicants without adverse factors. Congress set the eligibility criteria and the bars to adjustment; USCIS may not add extra-statutory conditions by memorandum.

115. After *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), this Court independently determines whether section 245 authorizes the standard PM-602-0199 imposes, without deference to the agency. It does not.

116. The First Circuit has already rejected the maneuver PM-602-0199 attempts. In *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005), the court invalidated a regulation that used the discretionary stage to accomplish what Congress had not done at the eligibility stage, holding that the agency "cannot get in through the back door of the relief stage what it cannot do at the eligibility stage." *Id.* at 28. Congress "has not been silent here": it "made numerous and explicit policy choices about who is eligible for adjustment of status relief, who is ineligible, and of those ineligible, who is nonetheless eligible with certain application restrictions." *Id.* at 29 (citing 8 U.S.C. §§ 1255(a), (c), (e), (i)). "From the language and structure of the statute alone," a rule inconsistent with those choices is "inconsistent with the expressed intent of Congress." *Id.* at 30.

117. PM-602-0199 does at the discretionary stage precisely what *Succar* forbids at the back door. Congress did not make the election to adjust rather than depart a bar, a restriction, or a disfavored circumstance anywhere in section 245. The Memorandum supplies that missing condition by administrative fiat, imposing on every applicant who uses the statute a presumption against relief that Congress never enacted — and imposing it most heavily on applicants whose records contain nothing else to weigh at all.

118. PM-602-0199 mischaracterizes *Arai* and *Blas*, which require a heightened equities showing only to offset adverse factors, and makes the absence of adverse factors insufficient. That inversion is traceable in the Memorandum's own text and has no basis in section 245.

119. PM-602-0199 is contrary to law and in excess of statutory authority and must be vacated and set aside.

**<u>COUNT II — APA: ARBITRARY AND CAPRICIOUS</u>**
**<u>(5 U.S.C. § 706(2)(A))</u>**

120. Plaintiffs reallege and incorporate the preceding paragraphs. PM-602-0199 is final agency action for the reasons stated above.

121. The APA directs a reviewing court to “hold unlawful and set aside” agency action that is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A).

122. *Henry* itself supplies the standard USCIS has failed to meet. Even broad discretion is abused where the agency fails to consider a significant relevant factor, assigns weight to an improper factor, or clearly errs in balancing the pertinent considerations. *Henry*, 74 F.3d at 4. "[D]iscretion is not to be confused with imperiousness": the agency must adhere to its own settled principles, adequately explain its decisions, and, when it departs significantly from precedent, "confront the issue squarely" and explain the departure. *Id.* at 5–7. PM-602-0199 assigns weight to an improper factor — the lawful election of a statutory remedy — and departs from the *Arai*/*Blas* framework and from USCIS's own Policy Manual without confronting the departure at all. Indeed, it denies that any departure has occurred.

123. USCIS failed to consider central features of the statutory scheme it purported to interpret. It ignored that Congress enacted section 245 to eliminate the departure-and-reentry requirement. It relied on a factor Congress did not authorize: the lawful use of adjustment, treated as an adverse event. It drew no rational connection between the text and structure of section 245 and the adverse-factor framework it adopted. It also failed to consider that for entire classes of eligible applicants, the consular alternative it prefers is legally unavailable. Immediate relatives who accrued unlawful presence before filing are one such class. They may adjust under section 245(a), but departure for a consular interview would trigger the bars of INA § 212(a)(9)(B). And through Footnote 18, USCIS attached adverse weight to a status lapse that its own delays create, with no explanation. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

124. USCIS also departed from the framework that has governed adjustment discretion since 1970 while representing that it was merely restating existing law. An agency that changes course must acknowledge the change and give good reasons for it; a false pretense of continuity is a hallmark of arbitrary action.

125. USCIS gave no reasons for abandoning a half-century-old framework and conducted no analysis of the reliance interests of applicants who filed under it. An agency changing course must assess whether there were serious reliance interests, and must weigh them; a formulaic or nonexistent treatment of reliance does not satisfy that obligation. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30–33 (2020). USCIS also failed to consider narrower alternatives that would serve any legitimate objective without penalizing the lawful use of the statute.

126. PM-602-0199 is arbitrary and capricious and must be set aside.

**COUNT III — APA: NOTICE-AND-COMMENT VIOLATION**
**(5 U.S.C. §§ 553, 706(2)(D))**

127. Plaintiffs reallege and incorporate the preceding paragraphs. PM-602-0199 is final agency action for the reasons stated above.

128. The APA requires notice-and-comment rulemaking for legislative rules and exempts only interpretive rules, general statements of policy, and rules of agency organization, procedure, or practice. 5 U.S.C. § 553.

129. A legislative rule is one that creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself. PM-602-0199 is such a rule. It amends the *Arai*/*Blas* framework — Board precedent binding on USCIS — by imposing an evidentiary burden not present under the prior framework and by converting lawful conduct into an adverse factor.

130. The Memorandum establishes binding norms rather than guiding case-by-case discretion. It directs that certain factors "are" adverse, that certain failures "are highly relevant," and that the absence of adverse factors "is not sufficient" — channeling officer discretion toward a predictable result that cannot fairly be called individualized *and the agency's own announcement that it 'will grant adjustment of status only in extraordinary circumstances' describes a binding norm, not a mode of case-by-case analysis.*

131. USCIS was required to proceed through notice and comment and did not. It neither invoked nor could satisfy any exemption. PM-602-0199 was adopted "without observance of procedure required by law" and must be set aside. 5 U.S.C. § 706(2)(D).

**COUNT IV — APA: IMPERMISSIBLE RETROACTIVITY**
**(5 U.S.C. § 706(2)(A))**

132. Plaintiffs reallege and incorporate the preceding paragraphs.

133. Plaintiffs' retroactivity claim does not rest on the proposition that the filing of an application freezes the substantive criteria governing its adjudication. *Cf. Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs.*, 127 F.3d 118, 121–22 (1st Cir. 1997). It rests instead on concrete steps Plaintiffs took, and cannot now undo, because the *Arai*/*Blas* framework and the USCIS Policy Manual told them adjustment was an ordinarily available route to permanent residence.

134. For many Plaintiffs, the consular route PM-602-0199 prefers is not an available alternative at all. An immediate relative of a U.S. citizen who accrued unlawful presence before filing is fully eligible to adjust under section 245(a) and is exempt from the section 245(c) bars — but would trigger the three- or ten-year inadmissibility bar of INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B), upon departing the United States to attend a consular interview. Congress made adjustment available to precisely these applicants so that they would not face that choice. PM-602-0199 nonetheless treats their use of adjustment as an adverse factor to be offset by unusual equities, and offers in its place a path that Congress's own inadmissibility bars foreclose. The Memorandum nowhere acknowledges this consequence, let alone explains it.

135. PM-602-0199 attaches new, adverse legal consequences to those completed choices. To the extent it is a substantive rule, it may not be applied retroactively absent express congressional authorization, which is absent.

136. To the extent PM-602-0199 is characterized as interpretive or adjudicatory, its retroactive application is impermissible under the balancing this Circuit and others apply: the change is abrupt and unannounced, departs from a settled rule, upsets specific and reasonable reliance, and rests on no statutory command requiring retroactivity.

137. As applied to pre-Memorandum filers, PM-602-0199 is impermissibly retroactive and must be set aside.

138. Plaintiffs reallege and incorporate the preceding paragraphs. PM-602-0199 is final agency action for the reasons stated above.

139. Adjustment discretion is governed by binding Board precedent. In *Matter of Arai*, 13 I&N Dec. 494 (BIA 1970), the Board held that a heightened showing of unusual or outstanding equities is required only to offset adverse factors, and that where no adverse factors are present and the favorable factors would otherwise warrant a grant, adjustment will ordinarily be granted. In *Matter of Blas*, 15 I&N Dec. 626 (BIA 1974), the Board confirmed that the heightened showing attaches to offset adverse factors. Both are published precedent decisions.

140. Board precedent binds USCIS. Decisions of the Board "are binding on all officers and employees of DHS." 8 C.F.R. § 1003.1(g)(1). Precedent decisions "serve as precedents in all proceedings involving the same issue or issues." *Id.* § 1003.1(g)(2). USCIS is a component of DHS, and USCIS adjudicators are officers and employees of DHS. An agency is bound to follow the rules that bind it. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

141. The regulation also specifies how binding precedent may be changed. Board decisions remain binding "[e]xcept as Board decisions may be modified or overruled by the Board or the Attorney General." 8 C.F.R. § 1003.1(g)(1). USCIS is neither the Board nor the Attorney General. Where the Secretary of Homeland Security may issue decisions that serve as precedent, the regulation says so expressly and prescribes the procedure. *Id.* § 1003.1(g)(2), (h)(2)(i). PM-602-0199 was not issued under that authority. USCIS invoked only INA § 103(a), 8 U.S.C. § 1103(a), and INA § 245(a), 8 U.S.C. § 1255(a).

142. PM-602-0199 directs officers to apply a standard *Arai* and *Blas* foreclose. The Memorandum instructs that "[t]he absence of adverse factors, by itself, does not demonstrate such unusual or outstanding equities." *Arai* holds the opposite. The Memorandum further instructs that an applicant's election of adjustment over consular processing is itself an adverse factor to be offset by unusual or even

outstanding equities. Neither *Arai* nor *Blas* recognizes any such factor. An officer who follows the Memorandum cannot at the same time follow binding Board precedent.

143. USCIS has therefore displaced binding precedent by internal memorandum, through a mechanism the regulation does not authorize. It did so without acknowledging that it was departing from *Arai* and *Blas*, and while representing that it was reaffirming a "consistent and longstanding approach."

144. The Memorandum's disclaimer that it is "intended solely for the guidance of USCIS personnel" does not cure the violation. The obligation Plaintiffs invoke arises from a regulation binding on DHS officers, not from the Memorandum. An agency cannot escape a binding rule by directing its officers to disregard it in a document that disclaims legal effect.

145. The Memorandum also displaces the individualized, totality-of-the-circumstances review that *Arai*, *Blas*, and USCIS's own Policy Manual require. 1 USCIS-PM E.8; 7 USCIS-PM A.10. In operation, it channels adjudication toward a predetermined result through requests for evidence and notices of intent to deny that recite the Memorandum's standard, through denials that omit genuine weighing of equities, and through decisions that treat non-departure or the status lapse described in Footnote 18 as dispositive. The extent of that practice will be established on the administrative record.

146. PM-602-0199 is not in accordance with law and was adopted without observance of procedure required by law. It must be held unlawful and set aside. 5 U.S.C. § 706(2)(A), (D).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Declare that Policy Memorandum PM-602-0199 is contrary to law, in excess of statutory authority, arbitrary and capricious, and promulgated without observance of procedure required by law;

2. Hold unlawful, vacate, and set aside PM-602-0199 in its entirety under 5 U.S.C. § 706(2), restoring the *Arai*/*Blas* framework that governed before its issuance;

3. Stay PM-602-0199 under 5 U.S.C. § 705, and preliminarily enjoin Defendants from applying or relying on it, to preserve the status quo for the pendency of this litigation;

4. Enjoin Defendants, to the extent necessary to afford complete relief, from applying PM-602-0199 to the adjudication of any pending or future Form I-485 application;

5. Order Defendants to readjudicate, under the *Arai*/*Blas* totality-of-the-circumstances framework, any Plaintiff's application that was adjudicated under PM-602-0199;

6. Award Plaintiffs their costs and reasonable attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and,

7. Grant such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED**
August 13, 2026

***/s/ Stefanie Fisher-Pinkert***
Stefanie Fisher-Pinkert
BBO#676653
655 Centre St, Box 300151
Jamaica Plain, MA 02130
(C) 203-952-1809
(E) stef@sfpbriefing.com

***/s/ James O. Hacking, III***
James O. Hacking, III
MO Bar # 46728
*Pro Hac Vice Requested*
Hacking Immigration Law, LLC
10121 Manchester Road, Suite A
St. Louis, MO 63122
(O) 314.961.8200
(F) 314.961.8201
(E) jim@hackingimmigrationlaw.com

**ATTORNEYS FOR PLAINTIFFS**